OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as  Consumers' Counsel *v.* Pub. Util. Comm.
(1986), 24 Ohio St. 3d 149.]

(No. 85-794—Decided June 25, 1986.)

*William A. Spratley,* consumers' counsel, *Lawrence F. Barth* and *G. James Van Heyde,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *Steven H. Feldman,* for appellee Public Utilities Commission.

*Russell J. Spetrino, Anthony J. Alexander, Michael R. Beiting* and *Leila L. Vespoli,* for intervening appellee Ohio Edison Co.

*Per Curiam.* In this appeal, the Office of Consumers' Counsel contests the recovery through the EFC of deferred development costs associated with the phase-down of Quarto Mine No. 7. While Consumers' Counsel would exclude deferred development costs associated with phased-down mines, the commission's approved methodology is based on actual contract costs which in this case include both operative and phased-down mines.

In its notice of appeal to this court, appellant asserts that: "The Commission erred when it approved *a change in the methodology* used by the Ohio Edison Company (Company) to calculate the pass-through to ratepayers of the costs of developing the Quarto Mines in that the new methodology allows the Company to recover costs through. the Electric Fuel Component (EFC) mechanism which are not acquisition costs of fuel pursuant to Ohio Revised Code Section 4905.01(F). * * *" (Emphasis added.) Appellant apparently ignores the fact that in the instant case, no "change" in methodology was approved; rather, the commission merely mandated the continuation of the methodology approved in an earlier proceeding.

At semi-annual hearings to review the fuel component of public utility rate schedules pursuant to R.C. 4905.301, R.C. 4909.191(C) requires the utility to demonstrate that its acquisition and delivery cost were "fair, just, and reasonable." "Acquisition cost" means "the cost to an electric light company of acquiring fuel for generation of electricity. * * *" R.C. 4905.01(F). In *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 6 Ohio St. 3d 469, this court generally approved the commission's practice of permitting recovery of deferred development costs through the EFC. By the terms of the contract between Quarto and CAPCO, the member companies are expressly obligated to pay development costs associated with the mines. No contractual distinction is drawn between active and phased-down mines, nor is the obligation dependent upon production from any particular mine.

Appellant urges that "[d]eferred development costs associated with an idle coal mine are not properly categorized as fuel acquisition costs within the meaning of Ohio Revised Code Section 4905.01(F)(2)."[2] However, that section does not apply to the instant case; it applies only to the determina-

---

[2] R.C. 4905.01(F) states, in pertinent part, that:

"* * * In determining a reasonable price for coal from a coal supply owned or controlled in whole or in part by the company, the public utilities commission shall consider the use of:

"* * *

"(2) Ineffective operating techniques. Such term does not embrace any associated cost including, but not limited to, delivery cost, the cost of handling the fuel after its delivery to such facility, the cost of such processing, readying, or refinement of the fuel as may be necessary in order to use the fuel to generate electricity, or the cost of disposing of any residue of such fuel after it has been so used. * * *"

tion of "a reasonable price for coal from a coal supply owned or controlled in whole or in part by the company * * *."[3]

Nor does this court's decision in *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153 [21 O.O.3d 96], support appellant's argument. There, this court determined that because an investment in terminated nuclear units never provided any service whatsoever, the cost of construction of those units was not properly recoverable under R.C. 4909.15(A)(4). In contradistinction, the case at bar relates to the actual contract cost of procuring fuel. In the instant analysis, then, it is simply irrelevant whether the cost of the terminated mine would have been recoverable under R.C. 4909.15(A)(4).

In sum, we find that appellant has failed to establish that the commission's decision to permit Ohio Edison to recover certain deferred development costs through the EFC is manifestly against the weight of the evidence or so clearly unsupported by the record as to show misapprehension, mistake, or a willful disregard of duty. *Consumers' Counsel* v. *Pub. Util. Comm.*, *supra* (6 Ohio St. 3d 469, 472); *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 35, 36-37.

Accordingly, we affirm the order of the commission.

*Order affirmed.*

PARRINO, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

CELEBREZZE, C.J., and LOCHER, J., dissent.

PARRINO, J., of the Eighth Appellate District, sitting for SWEENEY, J.

LOCHER, J. dissenting. In *Consumers' Counsel* v. *Pub. Util. Comm.* (1983), 6 Ohio St. 3d 469 ("Quarto One"), I indicated in my dissent that compelling the ratepayers to absorb unnecessary costs, derived from a project that was "not a completely arm's-length transaction," *id.* at 474, was analogous to passing on the cost of cancelled nuclear plants to consumers — a position which this court refused to adopt in *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153 [21 O.O.3d 96]. During the time of Quarto One, however, all the mines in question were in operation. Now, in a situation with an even greater similarity to the cancelled nuclear power plant cases, this court has decided to compel ratepayers to subsidize a "cancelled" coal mine that, based upon refinancing costs, "might very well be closed" indefinitely. (Testimony of William

---

[3] See *In re Regulation of EFC of Ohio Edison Co.*, case No. 81-305-EL-EFC (Subfile A) (July 30, 1982), in which the commission determined that the CAPCO companies do not have the requisite control over the Quarto mining operation for R.C. 4905.01(F) to apply. The question of ownership or control of Quarto was never an issue in the instant appeal.

R. Forsyth, Manager of Production Fuel Department, Ohio Edison Company.)

The majority opinion states that "[a]ppellant apparently ignores the fact that in the instant case, no 'change' in methodology was approved; rather, the commission merely mandated the continuation of the methodology approved in an earlier proceeding." However, it is the majority that fails to recognize that continuing a methodology predicated upon certain assumptions that no longer exist, such as the working Quarto Mine No. 7 that subsequently closed on June 20, 1984, should require a modification in the methodology to maintain the *status quo, i.e.,* spreading costs to *working* coal mines.

The majority also notes that "[n]o contractual distinction is drawn between active and phased-down mines, nor is the obligation dependent upon production from any particular mine" between Quarto and CAPCO. The majority fails to recognize the lack of such distinction as being further evidence of either poor business judgment or the lack of an arm's-length contract. In either eventuality, the R.C. 4909.191(C) criterion requiring a utility to demonstrate that its acquisition and delivery costs were "fair, just, and reasonable" is clearly rebutted.

While it gives me no pleasure to say "I told you so" to the majority, the costs associated with a closed-down mining facility should be absorbed by Quarto and/or CAPCO, and not the ratepayers of this state in a manner which this court rejected in the similar context of closed nuclear plants.

Accordingly, I dissent.

CELEBREZZE, C.J., concurs in the foregoing dissenting opinion.